Mr. Schindler, you deserve two minutes for rebuttal. You may proceed. Thank you, Your Honor, and may it please the Court, I am Russell Schindler, arguing on behalf of Dana Gatling, the plaintiff and appellant in this matter. Ms. Gatling appeals from the granting of summary judgment in this Section 1983 case arising out of a DWI arrest. The facts in favor of Ms. Gatling involve the fact that Trooper West did not observe any erratic operation as he followed her for half a mile, that when he put his lights on, she pulled over promptly and normally, that when he approached the car, she was friendly and cooperative. She stated where she was coming from, where she was going. She produced a valid license and registration as requested. When she exited the vehicle, she did not trip or fall or stumble in any way. At what point did he ask to search her car? As I understand it, it was after the field sobriety testing had been conducted, and that was when he refused, right? No, he did observe, he said he searched the... He refused... I'm sorry? I understand the testimony, I'm sorry, Judge, that he did observe the interior compartment of the vehicle, and that he found no alcohol containers, no empty pill containers, no indicia of drug use of any kind, no crack... Wasn't that after he arrested her? I believe... Doesn't the record establish that he requested to search the car and she refused? And I thought that was just after she was stopped, but please correct me if I'm wrong. I understood the request to search the vehicle came at the end of the field sobriety testing, and I'm not 100% positive that I'm correct. But that's what I seem to recall. I would also point out that there was no odor of alcohol, no odor of marijuana. There's a factual dispute about the field sobriety testing. Trooper West acknowledges that she adequately performed the horizontal gaze nystagmus and the alphabet test. When it came to the three tests that he claimed she failed, he cannot describe how. He cannot tell the court which clues she demonstrated, which would indicate that she had some impairment. And I contrasted that in my brief to this court's decision in Otero versus Town of Southampton, where the officer there was able to clearly describe each of the field sobriety tests and how Mr. Otero had failed. Mr. Shin, let me just ask you about that, because I know you put a lot of significance on that. First of all, she disputes that she failed. I think that's more significant, but I don't know if you ask someone to put one leg up and they aren't able to do that, and you write fail, would an officer make a notation of how they failed it or just write that they failed? What do you write if they can't put a foot up in the air? I don't know. Judge Bianco, I've been doing criminal defense for 36 years, and the officers always make notes as to how somebody failed, because they're always asked to describe that in the context. Yes, and that's why I pointed out the testimony of the officer in the Otero case, because that's what you usually hear. You hear, for instance, that he was unable to follow the pen with his eyes without moving his head. When asked to estimate the passing of 30 seconds, he stopped at 19. When asked to walk nine steps heel to toe and then return nine steps, he actually walked 11 and came back only four steps, all while his arms were raised. That's the type of testimony we always hear in these DWI cases, and that's why I focus so much on it, because if you can't describe the clues, it's really just conclusory allegations. It's like, you know, she failed because I say so, and I don't see that as probative or conclusive in any way. Can I ask you a question about the initial stop? You referenced the fact that even though there was the 9-1-1 call and the vehicle matched the description, that he said he followed her for approximately a half a mile and saw no erratic driving. There was this other issue about whether or not she violated the vehicle and traffic laws by following too close. But his testimony on that, where she was 25 to 35 feet behind the other car, and your position is that that's not even a violation of the vehicle and traffic laws? Yes. In looking at those cases, I found, I'm sorry, I probably can't say this, but I found two or three cases that are not reported cases. So under the rules of your court, I'm not allowed to cite to them. There was one reported decision I was able to cite, and that case was somebody following one car length behind at 50 miles per hour. I could not find a single case where more than where it was held following too closely for more than one car length behind. And if we were to take the testimony most favorably of the client, we'd have to say 35 feet, which would be out of bounds of his. That's my, that's right. That was my argument that she's entitled to the, he said 50 to 55 miles per hour. So I think we're entitled to 50 and two to three car lengths. So I think we're entitled to three car lengths. The law is that we resolve those ambiguities in favor of the non-moving party. But the arrest is for DWI. The stop was for something else and, and, and be that as it may, we're challenging the arrest more than we are the initial stop. And here, the facts are just simply. Well, but the law is, if you have, if you have the ability to arrest for anything, right, it doesn't matter. If there was in fact a traffic infraction, that was, you know, the arrest was for driving while impaired under the law, it would still be okay. If it turned out to be a vehicle, a violation of the vehicle and traffic laws, right? Well, again, we're not conceding that there's a vehicle and traffic law violation. She denied it specifically. She denied speeding or, or, or any violation of the vehicle and traffic law. But, but I don't agree. I think that once, you know, if you're stopped for following too closely, the officer would, would issue a ticket and release her. When he testified, he testified that he placed her under arrest for DWI. And that was the basis of the arrest. And also, I'm focused on the false threats, but you still independent that have a malicious prosecution claim because DWI is, you know, different in severity, obviously from the traffic violation. Yeah. And that, and both cases were dismissed eventually. All right. All right. I think your time is up, but you reserved two minutes. Go ahead. It pleased the court, even setting the issue of the field test entirely to one side and assuming that plaintiff passed all of them. Trooper West had probable cause, or at least arguable probable cause to arrest plaintiff for drug-impaired driving based on three key facts that are not in genuine evidentiary dispute. Number one, minutes before spotting plaintiff's car, Trooper West received a 911 report of a car driving erratically with the same date. Did he actually receive the report? He didn't receive the report directly from the caller. How did the report get to him? The report got to him through the 911 dispatcher who transmitted the details that the caller told the dispatcher. The dispatcher then told Trooper West. And the trooper was in his barracks. The trooper was just outside of the barracks. He was the testimony that he was in or near his car in the parking lot at the time, the parking lot of the barracks. So then the dispatcher told West what he or she had just heard on the phone? That's right. The dispatcher relayed the details of the 911 report, which were that there was a car driving erratically with the same make, model, color, location, and direction of travel that ended up matching plaintiff's car exactly. And that's uncontested fact. I'm very surprised at what you just said. You're saying if she passed all the field sobriety tests, that he would have probable cause to arrest her for driving while impaired because of a 911 call of erratic driving. And then he follows her for a half a mile and he observes no erratic driving. So how can you have probable cause based upon a 911 call independent of a field sobriety test if you follow the person for a half a mile and they don't they don't they're not erratically driving? Your Honor, I'm not saying that at all. I'm saying that there was at least arguable probable cause based upon three key facts. The erratic driving report was one of them. What's the other two? And fact number two is that as trooper with plaintiff's car, he saw the car, if not driving erratically, never the least 50 miles an hour, yet allowing just three car lengths, violating a New York state police rule of thumb and the common safety practice of allowing at least one car length. Mr. Ginsburg, you would concede that if that were the test that New York state law enforcement officers, in fact, applied, why every single car on the BQE could be have their drivers subject to arrest to stop every single 10,000 drivers a half an hour on I-95 violate that. So it seems to me that there's something else at play here because that makes no sense. Your Honor, there is something else at play, which is the third evidentiarily undisputed fact that I was hoping to get to, which is that. Well, get to it then. Go ahead. Okay. Which is that during the ensuing traffic stop after observing this unsafe operation, and I realized that perhaps because of law enforcement discretion and a whole host of other reasons that rule might not be enforced against everyone on the BQE, but be that as it may, uncontested fact number three, during the ensuing traffic stop, Cooper West saw plaintiff exhibit several physical and verbal deficits. Plaintiff had constricted pupils. What does a constricted pupil look like? Constricted pupil looks like, I don't think there's a photo in the record, but it looks like unusually small pupils. Pupils that are smaller than they would ordinarily be. Is he an ophthalmologist? He's not an ophthalmologist. What he is is a trained officer who's trained to recognize, among other things, signs of DWI, and there's a page in the joint appendix at page two. Mr. Ginsburg, let me make sure I understand what you're saying. I'm really confused now. So a 911 call says erratic driving. You follow for a half a mile. There's no erratic driving. You violate a quote unquote rule of thumb. I'm not even sure what that is, but a rule of thumb that you should not be driving. You need 35 feet behind the car in front of you. It's too close. You pull the car over. We have to assume, because apparently you're conceding this for purposes of her testimony. She passes the whole field sobriety test. You have probable cause to arrest because of constricted pupil. If the officer says, well, look, I know she passed the field sobriety test. I know I didn't see any erratic driving, but she was 35 feet behind the car in front of her and she had constricted pupils. Case over. Probable cause, driving while impaired. No way, Your Honor. That's why I need to get. What you're missing, Your Honor, and it's no fault of your own, are the other physical and verbal deficits in this collection that I'm referring to as uncontested fact number three. Constricted pupils is the first, but it's not the last. Patricia Trooper West also observed impaired speech. Wait, why is that uncontested? She denies it. She doesn't. She does not deny it. And all the tests you ran, a half dozen tests showed no drugs, no alcohol. So why isn't? Considering all the facts in her favor, which we are required to do on summary judgment, she wasn't impaired. Your Honor, that is your people confirmed it, right? We confirmed what the drug test showed after the fact with respect to the limited. You're not suggesting she I mean, no one's no one's contesting. She took drugs after she was arrested. No, I don't think anyone's making that allegation. What I'm saying is apart from from the you know, we have arguments in our brief. I'm willing to put those aside for now about the passage, the passing of the field tests independent of that. And you can see this at page 267 of the joint appendix at Trooper West sworn sworn bill of particulars. In addition to the. Wearing her testimony to say I had I see I had slurred speech that night. She doesn't say that, but that's disputed. That's disputed. She has slurred speech. She doesn't admit she has slurred speech. And Judge Parker's point is if she tested negative for drugs, couldn't a jury conclude there was no way she had slurred speech because she had no drugs in her system unless she was slurring her speech because she had a cup of coffee, which is if she was slurring her speech because she had a cup of coffee or alcohol or something else that after the fact issue would not affect Trooper West probable cause at the time of arrest. I'm saying that you're missing my point. My point to you is a jury doesn't have to credit him saying just because he says he had slurred speech. They don't have to credit that based upon the whole totality of the circumstances. They could say she didn't have any drugs in her system and we don't believe them. Well, there's no I mean, I suppose a jury can always disbelieve any witness, even if there's no testimony. What if he passed five field sobriety tests? Couldn't they say, you know what? She had no drugs in her system. She passed five different field sobriety tests. I don't think she slurred her speech. I think he made that up. Your Honor, I'm putting the field sobriety test to one side. And what I'm what I'm trying to point out is that Trooper West made a separate observation in his sworn ability. Why can't the jury reject his testimony on that? She passed five sobriety tests that she testified to and she had no drugs in her system. Can a jury rationally say we don't think she slurred her speech no matter what the officer said? The jury could say that if she there is some evidentiary testimony from the plaintiff denying it and there isn't. There are assertions in her appellate briefs, but you will find nothing in the record, nothing in her testimony saying that. Did you ask her in her deposition, were you slurring your speech or not? I don't know whether you have slurred speech that night. Your Honor, I don't know whether she was asked that, but she's obviously. Haven't you read her deposit? Didn't you read her deposition? Yes, I read her. I read her deposition. What was she asked that question? Your Honor, I don't believe she was. She didn't admit to slurring speech. I'm not saying that she conceded it. I'm saying that she did not contest it. It would have been the easiest thing in the world to put in a declaration after seeing this bill in particular. She contested every one of these charges and you all dropped every one of these charges against her. You had no evidence against her. Every single charge was prima facie dismissed, correct? Well, I don't know if it was prima facie dismissed. It was dismissed after an evidentiary investigation. After the judge looked at it. After the judge looked at it. Toss them all out. Yes, Your Honor. And why couldn't a jury have easily disbelieved West's testimony that he stopped her under the circumstances he testified he did? In terms of the circumstances for the stop, Your Honor? Yeah, yeah. Those circumstances are uncontested. There's no testimony from the other side. And again, I suppose a jury could always disbelieve any witness, even if there's no testimony on the other side. But there is no evidentiary dispute that before stopping the car, there was this 911 report, which described an erratic driving car that matched plaintiff's car with someone who had no apparent motive to fabricate. It make, model, color, location, time and direction of travel. And then once Trooper West caught up with the car, he saw the car driving, if not. One of the things that counted in your decision to prosecute this woman was central nervous system impairment, right? That was one of the factors that the other trooper, who is not the defendant, not the appellee in this case, found in his drug recognition test. And that's one of the reasons they held her? That is one of the suspicions of the title. And so explain to me what central nervous system impairment is. Central nervous system impairment. And Your Honor, I'm not a medical doctor either, just like the troopers. But central nervous system. Well, they'll find it. They identified it. What business do they have identifying it if they don't have any basis, any specialized trainment training for it? They relied on it. Oh, Your Honor, they do it. Your Honor, they don't have medical degrees, but they do have specialized training. Well, explain to me what it is. Central nervous system impairment is the type of I'm not sure I can do a better job than saying it's the type of impairment that was observed or allegedly testified to be observed in this case. So how do you get what would lead you to fail a drug test if you failed the drug test, the the supposed expert in identifying impaired people officer did was largely the same things that Trooper West did on the scene, right? He went through these various tests and said she didn't pass them. He did make notes of how she didn't pass them. And I guess the idea is if you can't walk up and down in a straight line or you can't balance, you have central nervous system impairment. Is that basically what you think? Not that you have it. It's that that is a sign of I'm sorry, Your Honor. That's a sign of. Yes, it is an indicator of that, as shown on page 282 of the joint appendix. There's actually a chart of a variety of drugs, categories of drugs and the general and specific indicators of ingestion of those drugs and all of those again, putting the field test to one side apart from the field test. There is no evidentiary dispute that at the at the traffic stop, plaintiff displayed impaired speech, impaired motor coordination and had something going on with her balance. And I see that I'm over time. And I'd like to close with this, that even if Trooper West did not have probable cause to arrest, nevertheless, he had arguable probable cause at the very least, because there is no appellate precedent binding on this court or a robust consensus precedence from other appellate courts indicating that probable cause cannot be established on the facts that are undisputed, even putting the field tests aside. The only decision that my friend on the other side cites is this court summary order in the Sackett case. Again, it's a summary order, so that can't establish the law in any event. But there, even evidentiarily, that case is not on all fours, but this one and couldn't have established the law, because in that case, the only undisputed evidence of impairment was a minimal flaw on a field test. I mean, Mr. Ginsburg, if in fact she was 35 feet behind the other car at 50 miles an hour. I know you said that it's a police rule of thumb, but in terms of whether or not that's a violation of vehicle and traffic laws, your adversary said, Mr. Schindler said, there's no case that says 35 feet at 50 miles an hour violates any vehicle and traffic law. What's your response to that? Well, my response to that is twofold. Number one, the vehicle and traffic law provision at issue, VTL 1129, sets forth a reasonableness test. So I wouldn't expect there to be a particular numerical threshold, but whether or not that tailgating that following constitutes a violation of the vehicle and traffic law is really beside the point. The question is whether it added to Trooper West's probable cause. So you're not relying on that as the basis for, in and of itself, the basis for the stop or the arrest, right? No, we're not relying on that in and of itself, nor are we relying on whether that does or does not state a VTL 1129 violation. Is part of the probable cause overall for why she was impaired? Part of the probable cause, because it is evidence of unsafe operation, perhaps not erratic operation, but unsafe operation, which further contributes to Trooper West's probable cause, or at least arguable probable cause. Thank you. All right, Mr. Schindler, you have two minutes in rebuttal. Thank you. So I would point out that in the SACOG case, case SACOG v. Carlson, there was a police officer who testified that he smelled an odor of alcohol, slurred speech, failed field sobriety tests, and in that case, the plaintiff had testified to having performed adequately on the field sobriety testing. She denied an odor of alcohol, eventually had a negative blood test, as in this case. This court reversed the grant of summary judgment in that case, in part because there was a video, dash cam video, in which this court was able to observe the field sobriety testing. And I argue that the negative blood test, in this case, is evidentiary corroboration of my client's testimony that she was sober and was not impaired, did not display lack of motor coordination of any kind. Was there, in her deposition, was there questions or talk about whether she had slurred speech or not, or that just wasn't covered? I don't think they asked her that, actually. In these other cases that I cite, too, the Corcoran v. Higgins, there was an appearance of impairment. Ms. Corcoran, in that case, had testified to having a panic attack, which that panic impaired. In the Otero case, the officer observed the erratic driving, observed the bus driver, Otero, get out of the bus and trip and fall as he got out. There's a Liberta case, Liberta v. City of Rome, where the plaintiff was seen driving erratically, had rear-ended a car, stopped in front of him, was unable to stand unassisted. This case is very different from the other cases that have been addressing this type of issue, which is probable cause to arrest for driving while intoxicated. Here, Ms. Gatling has contested every important fact that would lead an officer to conclude that a driver was impaired. I ask that the court reverse the lower court. Is there any evidence in the record, I didn't see in the brief, that what barracks was involved here? I believe they're out of Oneonta, Your Honor. Is there any evidence in the record that these officers have quotas, traffic quotas, traffic ticket quotas? No, that was never developed. All right, thank you, Mr. Schenmaier, thank you, Mr. Ginsburg. We will reserve the decision. Have a good day. Thank you, you too.